## Hartman v. Schuylkill Valley Transit Company et al.

*Frank R. Ambler*, for claimant; *C. Brewster Rhoads*, for defendants.

STERN, P. J., March 4, 1933.—This is a workman's compensation case. The claimant's husband was a motorman operating a one-man trolley car, and on March 8, 1932, was found dead, lying at the rear end of his car. According to the facts found by the Workmen's Compensation Board, the decedent had taken his car to within a few feet of the end of his run, had left the car, gone to the rear of it and pulled down the trolley pole. There was no dispute as to the actual cause of his death being angina pectoris.

It appears from the evidence that the decedent was seventy years of age. He had been examined on December 26, 1931, by Dr. Kriebel, who said that Hartman was suffering from angina pectoris and had a severe attack at that time, that his heart was enlarged, his heart muscles weakened and degenerated, and that he had a mitral valve lesion; furthermore, that such a condition is incurable and progressive. Dr. Kriebel ceased treating him on January 13, 1932, and at that time advised him not to do any more work. However, he did go back to work in February—about three weeks before the time of his death—having been examined by Dr. Cordonna, the examining physician for the defendant company, who examined him on February 15, 1932, and reported him physically qualified for work; he stated that he found nothing wrong with him except "the ordinary pathological changes."

The only witness who expressed an opinion that the cause of the decedent's heart attack was the exertion of performing his work immediately prior to his death was Dr. Shepherd. He stated that the death "was caused by coronary disease caused by exertion and exhaustion." He testified that where one has had an attack of angina, the causes of subsequent death may be "motion, excitement, cold or inclement weather, flatulence and marked nervousness or exhaustion." He further said: "I am assuming this man working that length of time and going around the trolley car, the exertion of raising his hands—he must have raised his hands—that was just the last straw that killed him." He also stated: "My opinion is that death was caused by his heart disease, plus exertion." And again: "Certainly any exertion . . . might bring on an attack." Again: "A man doing work that this man did with angina ought to have been stopped immediately." The witness was asked by the referee: "I am trying to find out whether opening the door, going into the cold (and it was testified it was an unusually cold night), stepping down and going back and pulling down the pole would be a continuing contribution culminating in the death." To which the witness replied: "I think so." "Q. Would that be, in your opinion, the cause of death? A. Yes, because in the degree of death in those particular cases you have to have association, for instance, you say one was opening the door, two was stepping down, three was walking around the car and, four, we assume he pulled the pole down—we have to have a combination of one and three, or two and four, or one and four, any one of those two grouped together is the cause of death in my opinion. Q. Then you would say that any one of these conditions would be contributory to his death; would you say that this would be enough exertion to create death for a man with the disease that he had? A. That's it." As a finding on this evidence, the referee said:

"There can be no question or doubt but that the deceased met his death by the over-exertion of leaving a warm car, going out into the cold night and going to the rear of the car, reaching over his head and pulling down the pole."

There was evidence that the release of the trolley pole required a pull against a resistance of about eighteen pounds.

The referee awarded compensation to the decedent's widow and was sustained in so doing by the Workmen's Compensation Board. In the opinion of the court, this award cannot be sustained.

There is a line of cases, of which the best examples are Lesko v. Lehigh Valley Coal Co., 270 Pa. 15, and Gausman v. R. T. Pearson Co., 284 Pa. 348, which hold that in cases of angina pectoris, apoplexy, paralysis and similar diseases connected with the circulatory processes of the body, compensation is not to be awarded unless the attack or stroke occurred as the result of "some untoward occurrence aside from the usual course of events." As stated in the latter case cited (p. 354):

"Such stroke will be treated as an accident when resulting from a shock, strain or other injury to the physical structure of the body . . . but here nothing of that kind occurred. The work was light with no unusual occurrence. . . . True, Dr. Frederick attributed the exhaustion, or stroke, to claimant's exertion in the performance of his work and expressed the opinion that but for the work it would not have happened at that time; in other words that the disability was hastened by the work; even so, that alone would not constitute an accident; otherwise it would be unsafe to give employment to anyone advanced in years."

And, similarly, in the Lesko case, supra, the court pointed out "that there was no unusual happening in the course of his work, nor marks nor evidence of external violence to his person, nor was there shown any sudden unlooked for occurrence in the course of his work calling for any extra exertion or strain other than that required by his usual and ordinary labor for the day," and accordingly held that the accident in that case was not compensable.

On the other hand, there is a line of cases enumerated in Murphy v. Phila. & Reading Coal and Iron Co., 98 Pa. Superior Ct. 108, all of which hold that even though there be a preëxisting chronic ailment, such as arterio-sclerosis, or a pathological cardiac condition, a paralysis or a death is compensable if caused by some specific act or occurrence resulting in a fatal strain to a vital organ. Typical of such cases is Samoskie v. Phila. & Reading Coal and Iron Co., 280 Pa. 203, where a workman afflicted with arterio-sclerosis was pushing a loaded mine car, with the result, as testified to by the physicians, that the exertion produced an increase in blood pressure which, in turn, resulted in the rupture of an artery, causing death.

The distinction involved in these two lines of cases is pointed out in the opinion of the Superior Court in Betts v. American Stores Co. et al., 105 Pa. Superior Ct. 452, and it is there again stated that where the causes of death are apoplexy, tetanus and the like, the "cases are recognized as accidents, when resulting from a shock, strain or other injury to the physical structure of the body . . . but there must be 'some untoward occurrence aside from the usual course of events.' "

There is admittedly some difficulty in applying to the facts of a given case the distinction thus laid down. In the present instance, however, the court is of opinion that the case falls on the side of the line represented by the Lesko and Gausman cases, supra, and that reason and common sense require that it should be so placed. To hold that the claimant here can recover would be to convert workmen's compensation into life insurance, and, so far from being beneficial to the cause of labor, would be prejudicial to it, since an employer would not dare to take the risk of maintaining in his employ anyone who, because of age, hardened arteries or other susceptibility to paralysis or death, would be likely to involve him in liability for compensation for what would really be the result of natural causes and not of an accident as that term is generally understood.

There is not the slightest doubt in the present instance but that the decedent was afflicted with angina pectoris and that he died of that disease. The testimony was clear that the slightest exertion in such a case might cause death, even, as one of the witnesses said, the mere exertion of walking, or of being subjected to cold, or even of sitting in a chair. The theory of the claimant, as testified to by Dr. Shepherd, was that death came as the result of the exertion and exhaustion involved in the whole day's work of the decedent, culminating in the leaving of his car, walking into the cold atmosphere outside, going to the rear of the car and pulling down the trolley pole. All of these acts, however, were nothing more than the routine of his daily job. If the strain of his merely standing on the car platform, or of moving the controller handle had produced his death, surely such death thus resulting would not be compensable. The same would be

true to the extent to which it was caused by his walking out of the car into the cold atmosphere and going to the rear of the car. None of these actions rises either to the gravity of an accident or of an "untoward occurrence." Indeed, to hold otherwise would be to make the company liable if a motorman having heart trouble dropped dead while at any of his work, because any effort whatever, as the doctors testified, might have brought about his death. In the opinion of the court, the same observation holds good as to the pulling down of the trolley pole. If such action had involved an unusual strain, similar to that of pushing the mine car in the Samoskie case, supra, and had thereby been the cause of an angina attack which otherwise would not have occurred, the case might well be a compensable one, but any such view of the facts of the present case would be so forced, so fantastic, as to be incompatible with ordinary observation and experience. Certainly the pulling down of a trolley pole is a part of the ordinary routine of a motorman's duties; everyone knows that it involves no undue or unusual effort; indeed, even the claimant's witness testified that it meant a pull against a resistance of merely about eighteen pounds. Nor did Dr. Shepherd pretend to say that the pulling down of the pole caused the decedent's death; he said that the association of any two of the existing circumstances, such as the exhaustion caused by the day's previous work, the walking out into the cold, the stepping to the rear of the car, and the like, would have been sufficient; indeed, in one part of his testimony he said that the mere raising of the decedent's hands would have been enough to have caused his death. It may be remarked in passing that there is no direct evidence that the decedent in fact had pulled down the pole. Under such circumstances, to hold that Hartman met his death as the result of an accident would be, in the opinion of the court, to extend the limits of the workmen's compensation law beyond anything that it was ever intended to reach, and to establish a precedent in industrial law harmful to employer and employe alike.

For these reasons, the defendant's exceptions are sustained, and the award made by the Workmen's Compensation Board is reversed.